```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/10/23
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TRUSTEES OF THE NEW YORK CITY                       :
DISTRICT COUNCIL OF CARPENTERS              :
PENSION FUND, WELFARE FUND,                      :
ANNUITY FUND, and APPRENTICESHIP,          :    1:22-cv-2001-GHW
JOURNEYMAN RETRAINING,                              :
EDUCATIONAL AND INDUSTRY FUND,            :    MEMORANDUM OPINION
TRUSTEES OF THE NEW YORK CITY                    :         AND ORDER
CARPENTERS RELIEF AND CHARITY                  :
FUND, THE CARPENTER CONTRACTOR         :
ALLIANCE OF METROPOLITAN NEW               :
YORK, *and the* NEW YORK CITY DISTRICT       :
COUNCIL OF CARPENTERS,                                 :
                                                                                        :
                                                    Petitioners,           :
                           -against-                                           :
                                                                                        :
AMCC INDUSTRIES, INC.,                                    :
                                                                                        :
                                                    Respondent.        :
-------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      Respondent AMCC Industries, Inc. ("AMCC") violated its collective bargaining agreements by failing to submit to an audit request. Pursuant to Section 301 of the Labor Management Relations Act, Petitioners seek to confirm an arbitration award obtained against AMCC. Because Petitioners have demonstrated that the arbitration proceeding was conducted in accordance with the parties' agreements, and was based on undisputed evidence, the Court confirms the award.

    **I.**    **BACKGROUND**

      **A. Factual Background**

      Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, the Carpenter Contractor Alliance of Metropolitan New York (together, the "Funds"), and the New York City District

Council of Carpenters (the "Union") seek to confirm an arbitration award pursuant to their collective bargaining agreements with AMCC.

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund are trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA").  Dkt. No. 11 ("Davidian Decl.") ¶ 4.  They are based in New York City.  Id.  The Trustees of the New York City Carpenters Relief and Charity Fund "is a charitable organization established under section 501(c)(3) of the Internal Revenue Code." Id. ¶ 5.  The fund is also based in New York City.  Id.  The Carpenter Contractor Alliance of Metropolitan New York is a labor-management not-for-profit corporation operating pursuant to Section 302(c)(9) of the Labor Management Relations Act (the "LMRA").  Id. ¶ 6.  It too is located in New York City.  Id.  The Union "is a labor organization . . . and is the certified bargaining representative for certain employees of AMCC . . . ." Id. ¶ 7.

On or around December 27, 2018, AMCC executed a Letter of Assent with respect to the Eastchester Gardens project (the "Project LOA"). Id. ¶ 8; see Dkt. No. 11-1 (Project LOA). By executing the Project LOA, AMCC also became bound by the New York City Housing Authority Project Labor Agreement (the "PLA").  Davidian Decl. ¶ 9; see Project LOA. The PLA, in turn, bound AMCC to the applicable collective bargaining agreement with the Union, to the extent the terms of the collecting bargaining agreement did not conflict with the PLA.  Davidian Decl. ¶ 12; see Dkt. No. 11-2 (PLA) art. 2, § 4; Schedule A.  Pursuant to Schedule A of the PLA, AMCC was bound to an Independent Building Construction Agreement with the Union (the "CBA") covering the period of July 1, 2017 through June 30, 2024.  Davidian Decl. ¶ 13; PLA art. 2, § 4; Schedule A; Dkt. No. 11-3 (CBA).  The parties' relationship was governed by the CBA at all times relevant to this action.  Davidian Decl. ¶ 14.

The PLA requires AMCC to "pay on a timely basis contributions on behalf of all employees covered by Agreement to those established jointly trusted employee benefit funds designated in Schedule A." *See* PLA art. 11 § 2; Schedule A.  In addition, the CBA requires AMCC to "make contributions for each hour worked of all employees covered by Agreement" to the Funds.  CBA, art. XV, § 1.  In order to verify that employers like AMCC make their agreed-upon contributions, the CBA requires AMCC to "make available to the Trustees of the various Fringe Benefit Trust Funds or their designated auditing representative, all pertinent books and records . . . required for an audit . . . to verify, independently, that the proper contributions hereunder have been paid and such records will be produced whenever deemed necessary by the Trustees . . . ." *Id.*

"The CBA and the PLA bind [AMCC] to the policies, rules, and regulations adopted by the Funds." Davidian Decl. ¶ 17; *See* PLA, art. 11, § 2(B); CBA, art. XV, § 3.  The CBA also binds AMCC to "the Funds' Revised Statement of Policy for Collection of Employer Contributions" (the "Collection Policy").  CBA, art. XV, § 3.  The Collection Policy states that "[i]n the event that an employer refuses to permit a payroll review and/or audit upon request by the Fund Office . . . the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period." No. 11-4 (Collection Policy) § IV, ¶ 12.  Such determinations "constitute presumptive evidence of delinquency." *Id.*

Petitioners requested an audit of AMCC pursuant to the terms of the CBA for the period from October 7, 2019 to the time of the request.  Davidian Decl. ¶ 23.  Despite this request, AMCC "failed to provide its books and records . . . for the purposes of conducting the Audit." *Id.* ¶ 24.  This triggered the Collection Policy's provision regarding denied audits, and the Funds thereafter estimated that the presumptively missing contributions amounted to $60,179.83. *Id.* ¶ 25.

3

Petitioners then initiated arbitration pursuant to the CBA's arbitration clause, under which the arbitrator has "full and complete authority to decide any and all issues raised . . . and to fashion an appropriate remedy . . . including . . . monetary damages." *Id.* ¶ 26; CBA, art. XV, § 7.

The CBA and the Collection Policy provide that in the event that the Funds are "required to arbitrate a dispute or file a lawsuit over unpaid contributions," the Funds are entitled to collect more than the late contributions alone. Davidian Decl. ¶ 20; CBA, art XV, § 7; Collection Policy, § 5. According to the Collection Policy, in addition to interest on the unpaid contributions, the Funds are entitled to a "delinquency assessment." Collection Policy, § 5, ¶ 4. "The amount of the delinquency assessment shall be the greater of (a) interest on the delinquent contributions . . . or (b) liquidated damages in the amount of twenty percent (20%) of the principal amount of all delinquent contributions." *Id.* The "[i]nterest owed by a delinquent employer" is "calculated at the prime lending rate of Citibank plus 200 basis points, compounded daily, on a declining principal basis." *Id.* ¶ 1. In addition, the Collection Policy mandates that delinquent employers are liable for all attorneys' fees incurred by the Funds when trying to collect delinquent contributions. *Id.* ¶ 6. The Collection Policy also states that delinquent employers are liable for "[a]ll recoverable costs actually incurred in court or other legal actions for the collection of delinquent contributions[.]" *Id.* ¶ 7.

Petitioners notified AMCC of their intention to arbitrate the matter by sending it a notice of intention to arbitrate on February 12, 2021. Dkt. No. 29-3. That notice was sent to AMCC in compliance with the methodology laid out in the Collection Policy and the CBA. The Collection Policy provides that "the Fund Office or Collection Counsel shall send by Certified Mail, Return Receipt Requested, a Notice of Intent to Arbitrate . . . against the employer." Collection Policy § IV(12). The CBA states that "service of any notice required by law in connection with arbitration proceedings may be made by electronic mail and/or registered or certified mail. A post office receipt shall be conclusive evidence of proper service if mailed to the address designated by the

4

Employer when it signed the agreement or to the last address known to the Union, whichever is more recent.  If certified or registered mail is refused or not picked up, ordinary mail shall be deemed sufficient service provided that it is forwarded to the address of record contained in this Agreement or to the last address known to the Union, whichever is more recent." CBA Art. XII, § 3.

The notice of intention to arbitrate was sent by regular and certified mail to the address used by AMCC when it subscribed to the PLA.  Supplemental Davidian Decl., Dkt. No. 29 ("Supp. Davidian Decl.") ¶¶ 10, 13.  The certified mail package sent to Respondent was not claimed.  *Id.* ¶ 14.  However, the regular mail delivery of the notice was not returned to sender.  *Id.* ¶ 20.

After Petitioners initiated arbitration, Roger E. Maher (the "Arbitrator") mailed AMCC notice of the arbitration hearing in a letter dated February 23, 2021.  Davidian Decl. ¶ 26; Dkt. No. 11-5 (the "Notice of Hearing").  The Notice of Hearing was served on AMCC at the address provided by it by both certified and regular mail.  Supp. Davidian Decl. ¶ 18.  The certified mail was returned as unclaimed.  *Id.* ¶ 19.  But, again, there was no indication that the regular mail was returned.  *Id.* ¶ 20.

The Arbitrator conducted the arbitration hearing on May 5, 2021.  AMCC did not appear at the hearing.  Dkt No. 11-6 (the "Award") at 1–2.  The Arbitrator issued his decision on May 8, 2021.  In his Award, the Arbitrator concluded that Petitioners had proven that AMCC "had legally sufficient notice of this proceeding and the claims against it." *Id.*  The Arbitrator then went on to determine that AMCC had violated the CBA by refusing the Funds' audit request.  He issued an award of $78,162.68 against AMCC "in accordance with the terms and provisions of the [CBA] and the Benefit Fund Trustees procedures." *Id.* at 2-3.  In addition to the estimated principal amount of $60,179.83, the Arbitrator awarded $3,046.88 in interest, $12,035.97 in liquidated damages, $400 in

court costs, $1,500 in attorneys' fees, and a $1,000 arbitrator's fee.[1]  *Id.* at 3.  Finally, the Arbitrator determined that 5.25% interest would accrue on the award from the date it was issued.  *Id.*

AMCC has not yet paid any of this award.  *See* Davidian Decl. ¶ 30.  Petitioners ask the Court to confirm the Arbitrator's award and to award additional relief.  Proposed J.  Petitioners propose an award of (a) $78,162.68—the original award; (b) $142.95 in costs from court proceedings; (c) $11,670.50 in attorneys' fees associated with the court proceedings; and (d) post-judgment interest at the statutory rate for civil awards under 28 U.S.C. § 1961.  *Id.*

The requested attorneys' fees are based on 46 hours of work.  Dkt. No. 30 ("Grancio Decl.") ¶ 24.[2]  Petitioners' counsel billed at the rates of $350 per hour for work performed by a partner, $275 per hour for work performed by an associate, and $120 per hour for work performed by legal assistants.  *See* Dkt. No. 12 ("Virginia Decl.") ¶¶ 7-10; *see also* Dkt. No. 12-2.  The "rates are the result of negotiations between [counsel] and the Funds."  Virginia Decl. ¶ 11.  Petitioners' counsel consisted of Charles Virginia, a founding partner at Virginia & Ambinder LLP ("V&A"), Nicole Marimon, a former partner at V&A, and Maura Moosnick, an associate at V&A.  Virginia Decl. ¶¶ 7–9.

### B. Procedural History

Petitioners filed a petition to confirm the arbitration award on March 10, 2022.  Dkt. No. 1.  The Court issued an order on March 14, 2022 regarding the petition.  Dkt. No. 7 (the "Summary Judgment Order").  In the Summary Judgment Order, the Court reminded the parties that proceedings to confirm an arbitral award must be "treated as akin to a motion for summary

---

[1] Petitioners state in several filings that they are requesting an arbitrator's fee of $500.  Dkt. No. 13 ("Petitioners' Memorandum") at 4; Dkt. No. 14 ("Petitioners' Statement of Facts") ¶ 26.  However, the arbitrator's award includes an arbitrator's fee of $1,000 and the total sum requested by Petitioners reflects a $1,000 arbitrator's fee.  *See* Award at 3; Dkt. No. 12-3 ("Proposed J.").  Accordingly, the Court understands that Petitioners seek a $1,000 arbitrator's fee.
[2] Petitioners' original petition sought reimbursement of $3,022.50 in attorneys' fees and $108.85 in costs.  *See* Dkt. No. 12.  The cost of prosecuting this action substantially increased following Petitioners' initial submissions to the Court.

6

judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 108 (2d Cir. 2006).  As a result, the Court directed the parties to brief the petition as if it were a motion for summary judgment.  Petitioner was directed to file a Rule 56.1 statement and all other supporting materials by March 31, 2022.  Respondent was directed to file an opposition by May 12, 2022.  Petitioners served their petition and the Court's order on Respondents on March 21, 2022.  Dkt. No. 9.

Petitioners filed a motion in the form of a motion for summary judgment on March 29, 2022.  Dkt. No. 10.  In support of their motion, as requested by the Court, Petitioners presented a Local Rule 56.1 Statement, in addition to affidavits setting forth the evidence that supported their arguments.  AMCC did not appear or file a response to the motion for summary judgment, despite being properly served with the complaint, motion, and all relevant filings.  *See* Dkt. Nos. 8-9.

The Court then worked to resolve the motion.  However, the Court wished to solicit feedback regarding one aspect of the briefing, so it scheduled a conference in the case to take place on July 20, 2022.  Dkt. No. 16.  The Court directed that the order scheduling the conference be served on Respondent.  At the teleconference held on July 20, 2022, a representative of AMCC appeared.  Because that representative was not legal counsel, the Court issued an order later on July 20, 2022 advising respondent that if no counsel entered an appearance in the case on its behalf by August 1, that it would consider the motion for summary judgment as unopposed.  *Dkt. No.* 20.  Counsel for AMCC entered an appearance just in time—on July 30, 2022.  Dkt. No. 21.

On that day, counsel for AMCC filed a letter on the docket of the case.  Dkt. No. 22 (the "Opposition").  AMCC asked that the Court accept the letter as its opposition to the motion for summary judgment filed by Petitioners.  Opposition ("Please be accept [sic] this Letter Memorandum of Law in Opposition to Petitioner's Motion for Summary Judgment to confirm arbitration award in lieu of a more formal memorandum of law.").  The Opposition was not a formal memorandum of law—it was only two pages long.  Most significantly, Respondent presented

7

no evidence in support of its opposition—no 56.1 Statement or response, no affidavits, no competent evidence of any type.

The Opposition argued that under a New York State procedural rule, the arbitration award should not be confirmed because Respondent had not been served. "NY Civ. Prac. P 7511 governs here. The award shall be vacated or modified on the application of a party who neither participated in the arbitration nor was served with the notice of intention to arbitrate . . . ." Opposition at 2. As noted above, while counsel provided unsworn argument that his client was not served with the notice and that they were not aware of the arbitration, AMCC provided no evidence that was the case.

Petitioners filed their reply on August 22, 2022. They filed a memorandum of law, an updated 56.1 Statement as well as supplemental declarations and exhibits in support of their position. *See* Dkt. Nos. 28-31.

The Court held a conference regarding the pending motion on February 3, 2023. The Court identified two principal purposes for the conference. First, the Court inquired of counsel for Respondent regarding his argument that the New York Civil Practice rule that was the basis of the legal argument presented in the Opposition applied to this proceeding. He was unable to make an argument that it did, contending instead that it was persuasive authority. The Court also inquired about whether the parties would be able to settle the case. Counsel for Respondent argued that the claims raised in the arbitral proceeding presented to the Court in this case overlapped with a later arbitration proceeding, which is not before the Court. After much discussion, the parties acknowledged that no settlement of this matter had been reached. However, Petitioners' counsel reiterated a prior settlement offer made to resolve the dispute raised in this matter. In a follow-up conference held by the Court on February 9, 2023, counsel for Respondent confirmed that they could not reach a settlement with Petitioner regarding the claims raised here.

## II.   LEGAL STANDARD

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421, 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award" (internal quotation marks omitted)).

Furthermore, "an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of

the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

Here, the Court treats "the petition and accompanying record . . . as akin to a motion for summary judgment." *Gottdiener*, 462 F.3d at 109. Thus, the confirmation petition would "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

### III. DISCUSSION

The unopposed evidence submitted by Petitioners shows that they are entitled to confirmation of the arbitration award, post-judgment interest, and attorneys' fees and costs.

#### A. Confirmation of the Arbitration Award

The Arbitrator concluded that Petitioners had established at the arbitration hearing that Respondent received proper service of the Notice of Hearing. Award at 1-2. Determining the sufficiency of the notice is a finding of fact within the scope of the Arbitrator's authority, the Court is bound by the arbitrator's determination. *See, e.g., United States Dist. Court S. Dist. of N.Y. Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. A to E Inc.*, 2018 U.S. Dist. LEXIS 52095, at *13 (S.D.N.Y. Mar. 20, 2018) (holding that the court is "bound by the arbitrator's finding" when the arbitrator found that a respondent had received "legally sufficient notice").

As outlined above, the undisputed evidence presented by Petitioners supports the Arbitrator's determination that notice of the arbitration was presented to AMCC in accordance with

the procedures outlined in the pertinent agreement. And Respondent has not presented any evidence in support of its position that it did not receive the notice. In the context of a motion for summary judgment, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Furthermore, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial.'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Respondent has failed to come forward with any evidence to support the arguments made in its Opposition. Even if the Court were not bound by the Arbitrator's determination, the record presented here does not support Respondent's argument.

There is no reason to believe that Petitioners procured the Award through fraud or dishonesty, or that the Arbitrator disregarded the CBA or acted outside the scope of his authority as arbitrator. Respondent does not contend that to be the case.[3] Rather, the record indicates that the Arbitrator based his award on undisputed evidence that the Petitioners attempted to audit AMCC, and that AMCC denied their audit requests in violation of the CBA[4] and the Collection Policy. The

---

[3] Respondent raised an argument during the teleconferences on February 3, 2023 and February 9, 2023 that a separate arbitration award should be considered in evaluating the confirmation of the award at issue here. No legal argument was presented in support of this argument and the arbitration referenced by counsel for Respondent has not been placed before the Court. The Court observes that the scope of review of an arbitration award in the context of an application to confirm the award is narrow; the potential effect of a separate award on the Respondent is not a relevant consideration. Petitioners affirm that following the separate arbitration referenced by counsel for Respondent, no settlement has been reached with respect to the matters presented in this matter and that "all amounts owed by AMCC pursuant to the . . . Award remain due and owing." Dkt. No. 30 ("Grancio Decl.") ¶ 14. During the conference held on February 9, 2023, Respondent's counsel conceded orally that no settlement of this matter has been agreed to between the parties.

[4] The Arbitrator states that the relevant collective bargaining agreement became effective on October 7, 2019. *See* Award at 1-2. However, October 7, 2019 was the date of the audit request. Davidian Decl. ¶ 23. However, because the CBA was in effect from July 1, 2017 through June 30, 2024, which encompasses the date of the audit request on

record also indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on undisputed testimony. *See* Award at 1–3. Accordingly, the Court grants Petitioners' motion and confirms the Award, including pre-judgment interest at a rate of 5.25% per annum from the date of the award through the date of judgment in this action.

### B.   Post-Judgment Interest

Petitioners further request post-judgment interest accruing from the date of judgment until AMCC pays in full. Proposed J. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013), and this mandate applies when confirming arbitration awards. *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

### C.   Attorneys' Fees and Costs of Bringing this Petition

Petitioners also seek to recover reasonable attorneys' fees and costs incurred by bringing this petition. Petitioners' Memorandum at 4; Proposed J. "[I]n a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for recovery of attorneys' fees. *See id.* "Nevertheless, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification." *Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (internal

---

October 7, 2019, the Court sees no reason to disturb the Arbitrator's award on this basis.

quotation marks omitted) (quoting *N.Y. City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03 Civ. 5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

"A party's failure to comply immediately with an arbitration award does not necessarily warrant an award of attorney's fees." *Id.* But courts have found such an award permissible where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc., v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 118 F.3d 893, 898 (2d Cir. 1997); *see also Ceona PTE Ltd. v. BMT Giant, S.A. De C.V.*, No. 16-cv-4437, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (awarding attorneys' fees and costs to petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the Final Award, and has not responded to [the petitioner's] petition in this action"); *Herrenknecht Corp. v. Best Road Boring*, No. 06 Civ. 5106, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding attorneys' fees and costs to petitioner in unopposed petition to confirm an arbitration award where respondent "offered no justification for refusing to comply with the decision of the arbitrator").

Here, an award of attorneys' fees and costs is justified. By entering into the CBA, AMCC agreed to submit all disputes to binding arbitration. Further, the Collection Policy entitles Petitioners to recover attorneys' fees incurred while "enforcing the Board of Trustees' rights to payroll reviews and/or audits."[5] Collection Policy, § 5. ¶ 6. AMCC has not complied with the award. For these reasons, the Court finds that it is just and reasonable to award Petitioners reasonable attorneys' fees and costs pursuant to bringing this action.

To calculate reasonable attorneys' fees, "district courts use the lodestar method—hours reasonably expended multiplied by a reasonable hourly rate." *McDonald ex rel. Prendergast v. Pension*

---

[5] Courts have also awarded attorneys' fees when there is a contractual basis for doing so. *See New York City Dist. Council of Carpenters Pension Fund v. Dafna Const. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006) (awarding attorneys' fees in confirming an arbitration award "because the Agreement itself require[d] [respondent] to pay attorneys' fees incurred by the Trustees in seeking confirmation").

*Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "[I]t is within the Court's discretion to reduce the requested rate" when the Court finds the rate unreasonable in the relevant market. *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, No. 05 Civ. 5546, 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008) (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998)), *report and recommendation adopted*, No. 05-cv-5546, 2008 WL 2940517 (S.D.N.Y. July 29, 2008). To assist the Court in determining the appropriate award, "[a]pplications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded" from the calculation of a reasonable fee. *Id.* (quoting *Hensley*, 461 U.S. at 434).

Petitioners' request is reasonable, subject to one modification to the rates charged by counsel. Petitioners request $11,670.50 in attorneys' fees and $142.95 in costs incurred in bringing this petition. *See* Dkt. No. 30-1 ("History Bill for the Ct."). Petitioners submitted invoices documenting the specific tasks performed, the number of hours worked in total (46), and hourly rates for the three attorneys and the legal assistants who worked on the case. See History Bill for the Ct. These are satisfactory records of the attorneys' efforts and sufficiently set forth the specific fees and costs incurred while seeking confirmation of the award. *See id.* Furthermore, these fees and costs "are the result of negotiations between [the Funds' attorneys] and the Funds regarding the proper hourly rates" for these legal services. Virginia Decl. ¶ 11. The Court also concludes that 46 hours is a reasonable number of hours worked given the description of the tasks performed.

The fees are based on the following rates: $350 per hour for Mr. Virginia, a partner at the firm who graduated from law school in 1989; $350 per hour for Ms. Marimon, a former partner at the firm who graduated from law school in 2014; $275 per hour for Ms. Moosnick, an associate at the firm who graduated from law school in 2021; and $120 per hour for the legal assistants. *See id.* ¶¶ 7–10. Ms. Marimon's rate is reasonable given her previous experience "serv[ing] as lead counsel for multiemployer benefit plans in ERISA litigation" and her status as a former partner of the firm. *Id.* ¶ 8; *see N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (noting that the rate of $425 per hour for partners in 2009 was a reasonable rate commensurate with the costs of similar work in the district for LMRA cases); *Watkins v. Smith*, No. 12-cv-4635, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) ("In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases."). The requested rate of $120 per hour for the work performed by legal assistants is also reasonable. *See, e.g.*, *Rosales v. Gerasimos Enters., Inc.*, No. 16-CV-2278, 2018 WL 286105, at *2 (S.D.N.Y. Jan. 18, 2018) (noting that hourly rates of between $100 and $150 have been found to be reasonable for paralegals); *S.J. v. New York City Dep't of Educ.*, No. 20-cv-01922, 2020 WL 6151112 (S.D.N.Y. Oct. 20, 2020) (recommending $125 as the hourly rate to be awarded to paralegals), *report and recommendation adopted as modified by* 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021).

However, the Court does not approve of the $275 per hour rate for Ms. Moosnick, who worked on this case months after graduating from law school in 2021 and who previously was a legal assistant at V&A. *See* Virginia Decl. ¶ 9; History Bill for the Ct. An hourly rate of $225 would represent the upper bound of the appropriate rate for an attorney with Ms. Moosnick's experience. *See Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Eclipse Constr. Servs. Inc.*, No. 1:21-CV-7868-GHW, 2021 WL 5567752, at *6 (S.D.N.Y. Nov. 26, 2021) (reducing the hourly rate from $275

15

to $225 for a V&A attorney who graduated law school in 2016); *see also Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Triangle Enter. NYC, Inc.*, No. 20-cv-793, 2020 WL 2306484, at *6 (S.D.N.Y. May 8, 2020) (same); *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Metroplex Serv. Grp., Inc.*, No. 18 CIV 5889 (PAE), 2018 WL 4141034, at *5 (reducing hourly rate of a V&A associate who graduated law school in 2016 from $275 to $225, which "represents the upper bound of prevailing rates in this District for junior associates."). Despite Ms. Moosnick's relative inexperience, the Court is willing to award Ms. Moosnick fees at the upper bound of $225 per hour, in light of Ms. Moosnick's significant role in prosecuting this action. *See* History Bill for the Ct. (showing Ms. Moosnick billed 31.7 hours of the total of 46 hours billed by V&A to this matter); *Metroplex*, 2018 WL 4141034, at *5 (awarding fees at the hourly rate of $225 despite attorney's "relative inexperience" as a reflection of "her apparent lead role in prosecuting this action").

Finally, Petitioners request the reimbursement of $142.95 in court costs resulting from serving AMCC with the petition to confirm the arbitration award and court fees. Petitioners' Memorandum at 7. This amount excludes the $400 already awarded as part of the Award. Courts in this district routinely permit the recovery of such costs. *New York City & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-cv-1115, 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016).

Accordingly, Petitioners' request for attorneys' fees and costs is granted with the reduced rate of $225 per hour for Ms. Moosnick's work. Petitioners are therefore entitled to $10,085.50 in attorneys' fees and $142.95 in costs.

### IV. CONCLUSION

For these reasons, the petition to confirm the arbitration award is GRANTED. The Clerk of Court is directed to enter judgment for Petitioners in the amount of $78,162.68, plus pre-judgment interest calculated at 5.25% per annum from May 8, 2021, through the date of judgment, together with attorneys' fees and costs in the amount of $10,228.45. Post-judgment interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is entered until payment is made in full.

The Clerk of Court is further directed to terminate the motion pending at Dkt. No. 10 and to close this case.

SO ORDERED.

Dated: February 10, 2023  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge